UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ORWO STUDIOS LLC, a Louisiana Company, PVS STUDIOS LLC, a Louisiana Company, and JC4 PRODUCTION LLC, a Louisiana Company,<br><br>                     Plaintiffs.<br><br>    v.<br><br>IN COLOUR CAPITAL INC., a Toronto, Canada Company and its individual operators, CAREY KURTIN, MATTHEW KURTIN, and LEE BRODA,<br><br>                     Defendants. | Case No. 1:23-CV-02697-CM<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>Claim based on corrupt enterprise collection of loan shark unlawful debt in violation of specific provision of the Racketeer Influenced and Corrupt Organizations Act |

Plaintiffs ORWO STUDIOS LLC, PVS STUDIOS LLC, and JC4 PRODUCTION LLC (hereinafter and collectively "Orwo Companies") bring suit against IN COLOUR CAPITAL INC. (hereinafter "Colour Capital"), CAREY KURTIN and MATTHEW KURTIN (hereinafter and collectively "the Kurtins"), and LEE BRODA (hereinafter "Lee Broda"), under the Racketeer Influenced and Corrupt Organizations Act (RICO).

## INTRODUCTION

1.    This RICO action pertains to an enterprise undertaken by Defendants, Colour Capital, the company's owner the Kurtins, and their associate Lee Broda, to originate and collect unlawful debt financing in New York. Working together as an enterprise, they organized and had Colour Capital prepare a "Credit and Security Agreement" loan (Exhibit A and B) for the Orwo Companies with a $500,000 advance, effectively carrying interest at 120% per annum charge designed as a "repayment premium." Their enterprise placed the loan through Colour Capital to the Orwo Companies. By amendment to the agreement, the "repayment premium" interest was

1

summarized as a charge totaling "$340,033.66" for the five months from February 9 through July 8, 2020 (Exhibit B). This "repayment premium" was without explanation or calculation in the agreement. Regardless of how the charge was named, regardless of how characterized, and no matter how masked by the agreement, it was interest on principal. That rate of charge continued even after the July 8 loan maturity, and failure to make full payment by the agreement document added post maturity penalty interest of another 7.5%, so that the Defendants' enterprise collected from the Orwo Companies' an interest charge at an effective annualized rate of 163.2%. As below, the agreement was unlawful by law.

## PARTIES

2.      Plaintiffs, Orwo Companies are limited liability companies formed pursuant to the laws of the State of Louisiana with offices at St. Francis, Francisville, Louisiana. The companies are in film entertainment production, and at the relevant time were producing the motion picture *Jeepers Creepers Reborn*. Each executed Colour Capital's agreement for the above $500,000 loan in order to finish the almost completed film.

3.      Defendants, the Kurtins, are residents of Toronto, Canada are owners of Colour Capital, and direct its activity and the enterprise activity. The Kurtins and Colour Capital are the alter ego of each other. These Defendants were associated with Defendant, Lee Broda, a Los Angeles resident who operates as a spotter of troubled entertainment industry companies in need of funds for film finish up money, and who can be compelled to pay unlawful loan shark rates. Defendant, Lee Broda, introduced the Orwo Companies to the Kurtins and Colour Capital, and participated in the affairs and requirements of the enterprise. All Defendants worked in a joint enterprise to make the Orwo Companies captive for the unlawful debt financing and collection in New York, above the interest rate bar of New York criminal usury.

4.      Defendant, Colour Capital, a Canadian corporation formed pursuant to the law of the Province of Ontario, drafted the subject written Credit and Security Agreement and its amendments. The Defendants' enterprise used Colour Capital to direct the usury debt collection in New York City. Defendants, Colour Capital, the Kurtins, and Lee Broda, were then operating a

common enterprise for the purpose of dealing with the Orwo Companies, as well as others. All the Defendants' as parties to their enterprise did so in a concert of action and conspiracy to derive financial benefit for themselves. Each knowing the enterprise was to undertake illegal debt collection, while deriving the personal profit as well as other benefit for the Kurtins and Lee Broda by claiming to be "Executive Producers" of the *Jeepers Creepers Reborn* film (Exhibit C, film credit titles).

## UNLAWFUL DEBT

5.  The RICO Act § 1962 makes available to a Plaintiff two separate civil causes of action; one for repetitive acts of racketeering, and separately another cause of action for collection of debt at twice usury rate of the state where collected. The congressional intent of the latter provision was to close down loan sharking enterprise in whatever form it may take. A single instance of such debt collection by such enterprise is a RICO § 1962 violation. The Act sets out an affirmative cause of action for plaintiffs against defendants who:

    (a) Receive income through a *collection of an unlawful debt* and use of such income or proceeds in the operation of an enterprise engaged in interstate or foreign commerce; or,

    (b) Through the *collection of an unlawful deb*t maintain an enterprise engaged in interstate or foreign commerce; or,

    (c) Engage with or associated with an enterprise engaged in interstate or foreign commerce in the conduct of such enterprise affairs through *collection of unlawful debt*; or,

    (d) Were persons who conspire for *collection of unlawful debt* as set out by (a), (b), or (c) above.

    (Emphasis added).

6.  By RICO Act, collection of *unlawful debt* refers to a debt "under state or federal law, where the usurious rate is at least twice the legally enforceable rate." Since New York is the

3

location where the collection was intended and did take place by Defendants' enterprise, by New York Obligations § 5-501, § 5-511, and § 5-521 and Penal § 190.40, a loan is unlawful when interest charged a corporation or limited liability company is one "exceeding 25-percentum per annum or the equivalent rate for a longer or shorter period," commonly referenced in New York as "criminal usury." Hence, by the RICO Act, when Defendants' enterprise collected interest at a rate more than twice the criminal usury rate (i.e., exceeding 50% annualized), they triggered a federal cause of action for Plaintiffs' recovery. Moreover, by New York Court of Appeals' decision, expressly made for the application of the Federal Second Circuit courts, when criminal usury interest is charged, the subject debt is "void and unenforceable," so that lender loses both the interest and principal by dealing in such transactions. Plaintiffs can sue for recovery of all monies paid to Defendants within the four-year limitation period of a § 1962 violation. By the Defendants' enterprise in obtaining collection on the void loan, and as a consequence of diverting Orwo Companies' use of the funds for illegal debt collection, Defendants have caused other damage in addition to the illegal interest.

## UNITED STATES DOMESTIC INJURY

7.  Although Colour Capital and the Kurtins operate Defendant's enterprise from across the border from the United States in Toronto, Canada, the enterprise enforcement was in foreign and interstate commerce through United States mail and wire transactions in the United States, and thereby within the reach of the RICO Act. Defendants' enterprise directed and obtained collection of the unlawful debt by requiring and obtaining repayment made at the designated place of collection, "JP Morgan Chase, Manhattan." Only from there is money transferred to the Royal Bank of Canada for what Plaintiffs are informed and believe are the enterprise's lawyers in Toronto. Thus, the Defendants enterprise completed their dealing by putting the Orwo Companies through the toxic loan ringer by collection in New York. Domestic injury occurred in New York, and by the very express terms of their Colour Capital drafted agreement, Defendants submitted to the law and jurisdiction of the United States Southern District Court.

## JURISDICTION

8.      This Court has personal jurisdiction of the non-resident Defendants. All were aware of, and purposely directed, consummation of repayment collection in New York. All intended to avail themselves of the privilege of conducting their enterprise business in New York. The Defendants' enterprise expected their acts to bring about payment and collection of monies by designated collection in New York. Their enterprise purposefully directed their tortious taking of unlawful debt money from the Orwo Companies in New York (Exhibit D). All Defendants thus placed themselves within the reach of New York procedure rule, CPLR 302, and along with Federal Rule 4 (e) and 4 (f) and are subject to service of process under Federal Rule of Civil Procedure 4 (k) (1) (A) and (C), or for 4 (k) (2), or 4 (f) (3).

9.      This Court has subject matter jurisdiction as Plaintiffs are Louisiana companies, Defendants are Toronto, Canada, and Los Angeles residents; so, under 28 U.S.C. § 1332(d)(2) there is a complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

10.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for violation of the RICO Act, 18 U.S.C. §§ 1961-1968.

## LOAN CIRCUMSTANCES

11.     Orwo Studios, LLC, as borrower and Defendant, Colour Capital as Defendants' named lender first entered a term sheet for a "bridge financing loan" of $500,000 to complete production of the *Jeepers Creepers 4* motion picture project, eventually named *Jeepers Creepers Reborn*. On February 9, 2020, the "Credit and Security Agreement" (Exhibit A) was then entered between the Orwo Companies and Colour Capital. The loan agreement advance was $500,000 (Exhibit A, ¶2) payable on the original maturity date April 15, 2020 (Exhibit A, ¶1). On June 12, 2020, Defendant, MATTHEW KURTIN, acting in the interest of Defendants' enterprise, put forward an Amendment (Exhibit B) to the Credit Agreement extending maturity date to July 8, 2020, and defining terms as of that date:

**Amendments.** The Original Credit Agreement is hereby amended as follows:

(a) **Definitions**: the definition of "Maturity Date" is hereby deleted in its entirety and replaced with the following:

""**Maturity Date**" means July 8, 2020 or such later date as the Lender may agree in writing (in its sole discretion);"

(b) **Definitions**: the definition of "Repayment Premium" is hereby deleted in its entirety and replaced with the following:

""**Repayment Premium**" means an amount equal to $340,033.66;"

Thus, the interest on the $500,000 principal over the first five months ending on July 8, 2020, was $340,033.66 and continued thereafter to a greater sum, along with additional penalty interest charge of 7.5% and other charge, thereafter, equating to 163.2% per annum interest. The charge was over three times the RICO threshold for loan sharking. All the while each of the Defendants in the enterprise received financial benefit from the overall transaction.

## DEBT COLLECTION CONDUCT

12. After Defendants' enterprise directed repayment at JP Morgan Chase, Manhattan, New York, they obtained a first payment of $450,000. on August 28, 2020. The remaining payment of $482,648.25 was made to JP Morgan Chase on September 25, 2020. The combined principal and interest of $932,648.25 was criminal loan sharking. Defendants continue to damage Orwo Companies by falsely painting the company's manager, Jake Seal "as not paying bills," as though there was legitimate debt, rather than in fact an unlawful debt and need not be honored. Defendants' enterprise was in continuous business of unlawful debt collection for the Orwo Companies' first transaction in 2020 as set forth herein, which was then followed by a second and almost identical transaction in 2021 dealing with Plaintiffs, likely using the interest proceeds from the first loan transaction as advance for the second.

13. On August 10, 2020, Defendant, MATTHEW KURTIN, demanded payment through United States mail (Exhibit E) on behalf of Defendants' enterprise for payment be made by Orwo Companies through Colour Capital at J.P. Morgan Chase, Manhattan location. At the time of the demand, and without any amendment entered by the parties to the agreement, the Defendants attempted redescribed the interest rate they had disguised as a "repayment premium."

6

The demand re-scrambled the description of the "repayment premium," intentionally misrepresenting that only $100,000 was due during the loan period before the July 8 loan maturity date, rather than the usurious $340,033.66 stated on June 12, 2020. The enterprise did so to slip the usury event past the Orwo Companies, moving that difference between those numbers over to a new additional charge after the July 8 maturity date. The attempt to cover up the actual loan shark practice reveals high-end legal advice to divert attention from the state and federal law, as well as revealing consciousness of guilt. Defendant, MATTHEW KURTIN, threatened that if full payment was not received that day, Defendant, Colour Capital would "commence enforcement proceedings," thereby misrepresenting that there was an enforceable debt. At the time, the Orwo Companies were unaware of the misrepresentations and did not know that as a matter of law, there was New York prohibition on unlawful repayment, and that the amount of debt and interest were void. At the time of misrepresentation, the Defendants' enterprise members, Defendants, the Kurtins and Lee Broda had already obtained and taken the position of "Executive Producers" of the motion picture project, and thereby undertook the implied obligation to not allow the Orwo Companies to be misled or be subject of unfair advantage. Instead, they did not inform the Orwo Companies of the unlawful debt that was taking place.

## RECOVERY OF USURY PAYMENTS

14. A corporation or limited liability company as a debtor is not required as a matter of New York law to pay criminal usury of a lender, and criminal usury is a complete defense against a suit for collection. Although a criminal usury loan and interest are void, as a matter of law, New York state procedural law appears not to provide cause of action for the amount mistakenly paid on the void debt. The RICO Act does provide the cause of action. The Act, 18 U.S.C. § 1962, provides the claim for loan payment at twice the usury rate obtained by a lender on unlawful debt as a matter of federal policy against unlawful loan shark enterprise part of racketeering conduct. By the RICO Act, plaintiff is to recover not only the criminal usury payments, but also three-fold damages, along with attorney's fees. This federal law does not interfere with New York state law, but rather enhances the law, and prevents the use of unlawful debt proceeds for interstate New

York commerce. The federal policy is not precluded by the state law, and by U.S. Constitution Article VI Clause 2 the RICO Act preempts any inconsistent state law provision.

## FIRST CLAIM FOR RELIEF

(Violation of 18 U.S.C. § 1962 (c))

15. Plaintiffs repeat the allegations of paragraphs 1-14 above.

16. Defendants are each a person within the meaning of 18 U.S.C. § 1961 (3) and 18 U.S.C. § 1964 (c).

17. Defendants were each employed or associated together within an enterprise under 18 U.S.C. § 1961 (4) and 18 U.S.C. § 1962 (c).

18. By the conduct of the Defendants' enterprise through organization and collection of an unlawful debt in violation of 18 U.S.C. § 1962 (c), Plaintiffs have been injured in their business and property in an amount to be determined at trial, but not less than the amount of the principal and interest collected by Defendants, then trebled. Injuries to Plaintiffs were directly, approximately, and reasonably foreseeable resulting from or caused by the violations of 18 U.S.C. § 1962 (c) and are not limited to loss funds alone, along with attorney's fees and costs.

## SECOND CLAIM FOR RELIEF

(Violation of 18 U.S.C. § 1962 (a))

19. Plaintiffs hereby repeat the allegations of paragraphs 1-14 above.

20. By reason of violation 18 U.S.C. § 1964 (a), Defendants have received income through the collection of unlawful debt and use of such income or proceeds in the operation of their enterprise. Plaintiffs have been injured in their business and property in an amount to be determined at trial, but not less than the amount of the principal and interest collected by Defendants, then trebled. Injuries to Plaintiffs were directly, approximately, and reasonably foreseeable resulting from or caused by the violations of 18 U.S.C. § 1962 (c) and are not limited to loss of use of those funds alone, along with attorney's fees and costs. criminal activities.

## THIRD CLAIM FOR RELIEF

(Violation of 18 U.S.C. § 1962 (d))

*By Conspiracy Violation of 18 U.S.C. § 1962 (c) and 18 U.S.C. § 1962 (a)*

21.  Plaintiffs hereby repeat the allegations of paragraphs 1-14, 18, and 20 above.

22.  By reason of violation 18 U.S.C. § 1962 (d) committed by the Defendants to conspire to violate the provisions of subsections of (a) and (c) above. Plaintiffs have been injured in their business and property in an amount to be determined at trial, but not less than the amount of the principal and interest collected by Defendants, then trebled. Injuries to Plaintiffs were directly, approximately, and reasonably foreseeable resulting from or caused by the violations of 18 U.S.C. § 1962 (c) and are not limited to potential loss of use of those funds alone, along with attorney's fees and costs associated with prosecuting Defendants' enterprise.

WHEREFOR, Plaintiffs pray for:

a. Judgment to be entered against Defendants IN COLOUR CAPITAL INC., CAREY KURTIN, MATTHEW KURTIN, and LEE BRODA, each of them jointly and separately for an amount not less than the $500,000 principal, and all interest collected by them, trebled in accordance with 18 U.S.C. § 1964;

b. For the cost of suit, including reasonable attorney's fees, in accordance with 18 U.S.C. § 1964 (c); and,

c. Equitable accounting for all benefits, considerations, and profits received directly or indirectly from use of the repaid $500,000 and interest thereon, including but not limited to, the imposition of a constructive trust;

PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY ON ALL ISSUES.

DATED:  June 4, 2023

*/s/ Paul Sigelman*
Paul Sigelman
Sigelman Law Corporation
Counsel for Plaintiffs (Pro Hac Vice)
479 N. Rodeo Dr., Suite 304
Beverly Hills, CA 90210
(310) 278-8011
paul@sigelmanlaw.com

*/s/ Adam Seiden*

                                              Adam Seiden
                                              Counsel for Plaintiffs (Local)
                                              9 West Prospect Avenue, Ste. 403
                                              Mt. Vernon, NY 10550
                                              (914) 699-6287
                                              AdamSeiden2002@aol.com